IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.   )<br>)   CRIMINAL NO. 3:20-cr-109<br>GORDON G. MILLER, III,   )<br>)<br>*Defendant*.   ) | |

**United States' Response in Opposition to**
**Defendant's Motion for Compassionate Release**

The United States files this response in opposition to the motion for compassionate release filed by the defendant, Gordon G. Miller, III, under 18 U.S.C. § 3582(c)(1)(A)(i). The defendant is currently serving a 151-month sentence at Fort Dix Federal Correctional Institution ("Fort Dix FCI") for the offenses of wire fraud, in violation of 18 U.S.C. § 1343, engaging in an unlawful money transaction, in violation of 18 U.S.C. § 1957, and receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A). He seeks early release from prison due to an increased risk of re-infection and severe illness from COVID-19 stemming from his underlying medical conditions and his conditions of confinement at Fort Dix FCI. Because the statutory sentencing factors in 18 U.S.C. § 3553(a) do not support release, the Court should deny his motion.

**Background**

**I.   Facts.**

As set forth in the uncontroverted Presentence Investigation Report (PSR), the defendant's criminal conduct in the present case covered a spectrum of offenses, including multiple fraud schemes, witness tampering, money laundering, and child exploitation. One of the fraud schemes devised and executed by the defendant was an investment fraud scheme

involving 10 victims who were collectively defrauded of over $800,000.  (PSR ¶¶ 14, 21). Through the use of false statements, misrepresentations, and material omissions, the defendant fraudulently induced these individuals into "investing" their money with him.  (*Id*. ¶ 14).  After obtaining the investors' funds, the defendant used this money to pay for his personal and business debts.  Further, the defendant used these funds for personal expenses, including, but not limited to, restaurants, hotels, and payments to female acquaintances and girlfriends.  (*Id*. ¶ 23).

Separately, the defendant engaged in a federal contracting scheme, and during the course of that scheme, the defendant laundered money at a check-cashing store.  (*Id*. ¶ 25).  As part of this scheme, the defendant submitted fictitious and fabricated time sheets and invoices in order to generate billings for a company he owned.  (*Id*. ¶ 14).  In total, these fictitious documents resulted in over $300,000 in billings for the defendant's company.  (*Id*.).

Based on law enforcement's investigation of the fraud schemes described above, federal agents obtained and executed a search warrant at the defendant's residence in or about June 2020, resulting in the seizure of – among other things – several electronic devices.  (*Id*.).  During a triage of an electronic device seized from the defendant's home, several images depicting child sexual abusive material ("CSAM") were discovered by law enforcement.  (*Id*.).  This discovery, among other things, ultimately led to the arrest of the defendant, as well as the execution of another search warrant at the defendant's residence.  (*Id*.).  This second search resulted in the seizure of additional electronic devices.  (*Id*.).  In total, 83 devices were seized from the defendant's residence, and at least 16 of those devices contained CSAM.  (*Id*.).  On these devices, law enforcement identified over 11,000 unique images or videos of sexually explicit conduct involving the use of a minor.  (*Id*. ¶ 26).

For the conduct described above, the defendant was charged in a three-count Criminal

Information filed in the Eastern District of Virginia on February 9, 2021.  (*Id*. ¶ 1).  Count One of the Criminal Information charged the defendant with wire fraud, in violation of 18 U.S.C. § 1343.  Count Two of the Criminal Information charged the defendant with engaging in an unlawful monetary transaction, in violation of 18 U.S.C. § 1957.  Lastly, Count Three of the Criminal Information charged the defendant with receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2256(8)(A).  On February 16, 2021, pursuant to a plea agreement, the defendant pled guilty to Counts One through Three of the Criminal Information.  (*Id*. ¶ 4).  As part of the plea agreement, the Government agreed to not recommend a total sentence of more than 151 months.  (*Id*. ¶ 5).

On August 6, 2021, the defendant appeared before this Court for sentencing.  (Dkt. No. 46).  Based on a Total Offense Level of 31 and a Criminal History Category of I, the defendant's combined Sentencing Guidelines ranges was 108 to 135 months.  (PSR ¶¶ 99-100).  Following the recommendation of the Government, the Court imposed a variant sentence of 151 months.  (*See* Dkt. 49 at 2).  The defendant's projected release date is May 31, 2031.

**II.      Defendant's motion for compassionate release.**

Prior to filing the present motion for compassionate release with the Court, the defendant submitted two requests for compassionate release to Fort Dix FCI on September 24, 2021 and November 30, 2021, respectively.  (Dkt. No. 72 at 2).  Both requests are still pending as of March 18, 2022.  (*Id*.).

The defendant filed the instant motion for compassionate release on February 9, 2022.  The defendant alleges that he suffers from several medical conditions, including obesity, rheumatoid arthritis, kidney disease, sleep apnea, COPD, asthma, and lung disease.  (Dkt. No. 56 at 6).  The defendant claims that his medical conditions and the conditions of confinement at Fort Dix FCI put him at a severe risk of re-infection of COVID-19.

**III.     BOP efforts to mitigate the effects of COVID-19.**

The federal Bureau of Prisons ("BOP") has implemented several measures to contain the spread of the virus within prison populations.  In recent months, BOP has made significant progress in distributing and administering vaccines to staff and inmates at its facilities.  BOP has also maintained COVID-19 protocols designed to prevent community spread, including limiting access to prisons, restricting prisoner movement within prisons, requiring screening and testing, providing masks and hand cleaners, and separating ill inmates from the rest of the population.

BOP has offered the vaccine to every inmate in BOP-managed institutions, except certain inmates who were recently admitted to facilities after vaccines had been administered.  BOP has also offered the vaccine to all staff members.  *Oversight of the Federal Bureau of Prisons: Hearing Before the S. Comm. on the Judiciary*, 117th Cong. 5 (2021) (statement of Michael D. Carvajal, Director, BOP).  All inmates are also now eligible to receive a COVID-19 booster shot. *COVID-19 Vaccine Guidance*, BOP 4 (Oct. 13, 2021), https://www.bop.gov/resources/pdfs/covid_19_vaccine_guidance_v14_0_2021.pdf.  Consistent with guidance issued by the Centers for Disease Control and Prevention ("CDC"), BOP has prioritized offering booster shots to inmates assigned to health service unit jobs; inmates in nursing care centers or other residential health care units; and inmates aged 65 years and older or those of any age with underlying medical conditions.  *Id.*  At this time, however, any inmate who requests a booster should be able to receive one.  As of May 14, 2022, BOP has administered a total of 316,976 doses of the vaccine at its facilities.  *COVID-19 Vaccine Implementation*, BOP, https://www.bop.gov/coronavirus/.  BOP will continue to offer the vaccine to newly arrived inmates and to inmates who initially declined the vaccine if they change their minds.

BOP also continues to operate under modified conditions according to three indicators of transmission risk: the facility's COVID-19 inmate medical isolation rate, the combined

4

percentage of staff and inmate completed vaccinations, and the transmission rate of the county where the facility is located. *COVID-19 Modified Operations Matrix*, BOP (Aug. 16, 2021), https://www.bop.gov/foia/docs/attachment2_covid19_modified_ops_matrix_2021_08_16.pdf. All inmates and staff must wear face coverings at all times in all indoor environments. *Id.* at 2. All areas, supplies, and equipment are cleaned daily. *Id.* at 4. Additionally, medical staff screen every newly admitted inmate for COVID-19. *COVID-19 Pandemic Response Plan*, BOP (July 15, 2021), https://www.bop.gov/foia/docs/COVID_pandemic_plan_docs_v6_2021_07_16.pdf. Inmates who are asymptomatic and test negative are placed in quarantine for 14 days. *Id.* at 74. Inmates who are symptomatic and/or test positive are placed in medical isolation. *Id.* at 73. Medical staff will test all other inmates for COVID-19 if they are symptomatic or if they are asymptomatic but have been exposed to a suspected or known case of COVID-19. *COVID-19 Modified Operations Matrix*, at 4.

Inmates who are transferring between facilities, moving to other correctional jurisdictions, or being released from BOP custody must quarantine for 14 days. *Id.* BOP will not transfer or release inmates with active COVID-19 "unless absolutely necessary." *COVID-19 Pandemic Response Plan*, at 72. For immediate releases where the inmate could not quarantine for 14 days, BOP provides a symptom screen, temperature check, and COVID-19 test on the day of departure and notifies the health authorities in the local jurisdiction if necessary. *Id.* at 76.

BOP previously suspended social visits but has since reinstated visits, directing each institution to adopt a visiting plan consistent with its resources, including space. *BOP Modified Operations*, BOP (Nov. 25, 2020),

https://www.bop.gov/coronavirus/covid19_status.jsp. Both the inmate and the visitor must wear facial coverings at all times. *Modified Operations Matrix*, at 6.

**IV.     Conditions at the defendant's facility.**

The defendant is currently serving his sentence at Fort Dix FCI, a low security level facility in New Hanover Township, New Jersey. He has served approximately 21 months, or about 14%, of his 151-month sentence, and his projected release date is May 31, 2031.

Fort Dix FCI has a total of 3,262 inmates. As of May 14, 2022, zero inmates and 2 staff members at Fort Dix FCI are positive for COVID-19. 1,521 inmates and 129 staff members previously tested positive for COVID-19 and have since recovered. Further, as of May 14, 2022, 2,886 inmates and 300 staff members have received both doses of the COVID-19 vaccine. *COVID-19 Vaccine Implementation*, BOP, https://www.bop.gov/coronavirus/. According to BOP records, the defendant received his first dose of the Pfizer-BioNTech vaccine on March 31, 2021 and his second dose on April 21, 2021. The defendant received a Pfizer-BioNTech booster shot on December 8, 2021.

The defendant previously tested positive for COVID-19 while incarcerated at the Northern Neck Regional Jail. (PSR ¶ 90). The defendant was admitted to the Riverside Tappahannock Hospital on December 9, 2020 and discharged on January 6, 2021. (*Id.* ¶ 91). At the time of discharge, his primary diagnosis was acute hypoxemic respiratory failure due to COVID-19, and he was prescribed several medications and treatments. (*Id.*)

**Argument**

**V.     The Court should deny the defendant's motion because he has not established an extraordinary and compelling reason for compassionate release.**

The defendant has not established that this Court should exercise its discretion under § 3582(c)(1)(A)(i) to grant compassionate release because he has not established a particularized

risk of contracting COVID-19 at his facility.[1]

Section 3582(c)(1)(A) authorizes a court to reduce a term of imprisonment when "extraordinary and compelling reasons warrant such a reduction." Although the statute "does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release," the Sentencing Commission has "addressed the issue in a policy statement." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). According to the policy statement, "extraordinary and compelling reasons" may exist based on the defendant's medical condition, age, family circumstances, or other reasons as determined by BOP. U.S.S.G. § 1B1.13. If a district court finds that extraordinary and compelling reasons exist, the court may not reduce a sentence before "considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable." § 3582(c)(1)(A). The defendant bears the burden of proving that he is entitled to relief under § 3582(c)(1)(A). *See, e.g.*, *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021); *see also United States v. Molina*, No. 3:12cr132, 2021 WL 1587904, at *2 (E.D. Va. Apr. 22, 2021); *United States v. Watson*, No. 1:07-cr-396, 2020 WL 7318269, at *1 (E.D. Va. Dec. 11, 2020).

The Fourth Circuit's decision in *McCoy* does not reduce the defendant's burden of establishing an "extraordinary and compelling" reason for relief under § 3582(c)(1)(A). In *McCoy*, the court held that the policy statement in U.S.S.G. § 1B1.13 is not "applicable" to compassionate release motions brought by defendants under § 3582(c)(1)(A). 981 F.3d at 281–82. Because § 1B1.13 "was adopted before the First Step Act" and specifically mentions only motions brought by BOP, the court reasoned that the policy statement does not apply to motions

---

[1] The defendant has properly exhausted his administrative remedies by filing two requests for compassionate release with the warden of Fort Dix FCI.

brought by defendants. *Id.* at 282. Absent an applicable policy statement, district courts should "make their own independent determinations of what constitutes an 'extraordinary and compelling reason[]' under § 3582(c)(1)(A), as consistent with the statutory language." *Id.* at 284. The Fourth Circuit noted, however, that § 1B1.13 "remains helpful guidance even when motions are filed by defendants." *Id.* at 282 n.7.

Further, the Fourth Circuit explained that "[b]oth before and after the change authorizing defendant-filed motions, § 3582(c) continues to describe the substantive ground the same—that a court may reduce a sentence 'if it finds that … extraordinary and compelling reasons warrant such a reduction.'" *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Accordingly, although the guidelines in § 1B1.13 "are not directly applicable to defendant-filed motions pursuant to § 3582(c), the court may consider these guidelines in defining what should be considered an 'extraordinary and compelling circumstance' warranting a sentence reduction." *United States v. Jenkins*, 22 F.4th 162,169 (4th Cir. 2021). Indeed, in conflict with *McCoy*, the Eleventh Circuit has held that § 1B1.13 "is an applicable policy statement that governs all motions under Section 3582(c)(1)(A)," such that "district courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with 1B1.13." *United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021).

Courts have held that the COVID-19 pandemic, by itself, is not a sufficient basis for compassionate release. *See, e.g.*, *United States v. Marcussen*, 15 F.4th 855 (8th Cir. 2021); *United States v. Thompson*, 984 F.3d 431, 435 (5th Cir. 2021) ("Fear of COVID doesn't automatically entitle a prisoner to release."). Given the widespread availability of the COVID-19 vaccine at BOP facilities, several courts have concluded that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—

does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021); *see United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release.")

At minimum, "a general fear of contracting COVID-19, without a sufficient basis for that fear, does not provide an extraordinary and compelling reason for a defendant's release." *United States v. Chandler*, No. 3:15mj122 (DJN), 2020 WL 6139945, at *5 (E.D. Va. Oct. 19, 2020). Instead, the Fourth Circuit has cited with approval the requirement that, "[i]n the context of the COVID-19 outbreak," a defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility" to establish an extraordinary and compelling reason for compassionate release. *United States v. Reams*, 847 F. App'x 199, 199 (4th Cir. 2021) (per curiam) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020)).

### A. The defendant has not demonstrated that he faces a particularized susceptibility to COVID-19.

The defendant has not established an extraordinary and compelling reason for compassionate release because he has not shown that he faces a "particularized susceptibility" to COVID-19. *United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020) (per curiam). He asserts that medical conditions place him at risk of developing severe symptoms if he contracts the coronavirus. Because he has been fully vaccinated and there are few active cases of COVID-19 at his facility, he has not established that he is entitled to relief under § 3582(c)(1)(A).

"To establish a particularized susceptibility to COVID-19, courts have required defendants to provide evidence that they suffer from a medical condition identified by the [CDC]

9

as a COVID-19 risk factor." *Chandler*, 2020 WL 6139945, at *5. The defendant asserts that he suffers from a variety of ailments, including, but not limited to, obesity, kidney disease, COPD, asthma, and lung disease. According to the CDC, individuals with obesity, asthma, COPD, kidney disease, and lung disease are more likely to suffer severe illness from COVID-19. *People with Certain Medical Conditions*, CDC (Feb. 25, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

The defendant, however, does not face a particularized susceptibility of contracting COVID-19 because he is fully vaccinated. The CDC represents that vaccination will protect individuals from getting sick with COVID-19 and "help prevent serious illness and death" even if they do contract the virus. *Benefits of Getting a COVID-19 Vaccine*, CDC (Feb. 25, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html. Further, according to the CDC, "[a]ll FDA-approved or authorized COVID-19 vaccines," including the Pfizer-BioNTech vaccine, "provide substantial protection against COVID-19 hospitalization and death." *Pfizer-BioNTech COVID-19 Vaccine (also known as COMIRNATY) Overview and Safety*, CDC (Apr. 1, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html.

Even acknowledging defendant's medical conditions, "it is now well understood" that, "following full vaccination," "both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced." *Lemons*, 15 F.4th at 751. Accordingly, "because the vaccine mitigates the risk of contracting COVID-19, the defendant must provide other evidence to establish an extraordinary and compelling reason for compassionate release based upon his concern about contracting the virus." *United States v. Smith*, No. 3:15-cr-101 (REP), 2021 WL 3641463, at *3 (E.D. Va. Aug. 17, 2021); *see United*

10

*States v. Kurzynowski*, 17 F.4th 756, 758 (7th Cir. 2021) (concluding that "the fact that [the defendant was] vaccinated preclude[d] a finding that the COVID-19 pandemic presents extraordinary and compelling reasons for his release"). Without more, defendant has not established a particular susceptibility to COVID-19 that would constitute extraordinary and compelling circumstances. *See, e.g.*, *Martinez v. United States*, No. 2:13-cr-122 (RAJ), 2021 WL 5139496, at *3 (E.D. Va. Nov. 3, 2021) (finding that the defendant failed to show a particularized susceptibility to COVID-19 because he had received both doses of the vaccine); *Smith*, 2021 WL 3641463, at *3 (same); *United States v. Sidhu*, No. 1:14-cr-399 (RDA), 2021 WL 2894723, at *5 (E.D. Va. July 9, 2021) (similar).

The fact that the defendant previously contracted COVID-19 does not establish "that he suffers a particularized susceptibility to reinfection of the disease or harm therefrom." *United States v. Nabaya*, No. 3:17cr3, 2021 WL 54361, at *5 (E.D. Va. Jan. 6, 2021). Given the widespread availability of vaccines at BOP facilities, courts in this district have consistently concluded that defendants who previously contracted and recovered from COVID-19 have not established a particularized susceptibility based on the possibility of reinfection. *See, e.g.*, *United States v. Drayton*, No. 1:09-cr-76-2 (RDA), 2021 WL 4267306, at *8 (E.D. Va. Sept. 20, 2021) (finding that defendant's hypertension and obesity "only suggest[ed] a particularized susceptibility" if his "vaccination and apparent full recovery from COVID-19 are ignored"); *United States v. Aqid*, — F. Supp. 3d. —, 2021 WL 3662124, at *2 (E.D. Va. Aug. 18, 2021) ("The combined efficacy of the vaccine and the Defendant's previous COVID-19 infection strongly suggests that he has little, if any, risk of contracting or suffering severe illness from COVID-19, even if his facility has another outbreak . . . ."); *see also United States v. Barberi*, No. 2:14-cr-162 (RCY), 2021 WL 44536063, at *4 (E.D. Va. Sept. 29, 2021) (finding that

11

defendant had not established a particularized susceptibility where she had recovered from COVID-19 and received both doses of the vaccine); *United States v. Jones*, No. 3:13-cr-13 (REP), 2021 WL 3082113, at *2 (E.D. Va. July 20, 2021) (finding that "the risk from COVID-19 must be considered slight" where the defendant had "contracted COVID-19, recovered from it, and . . . been fully vaccinated").

> **B.  The defendant has not demonstrated that he faces a particularized risk of contracting COVID-19 at Fort Dix FCI.**

Even if the Court determines that the defendant suffers from a medical condition that makes him particularly susceptible to COVID-19, he has not established an "extraordinary and compelling" reason for compassionate release because he has not shown a "particularized risk of contracting the disease at his prison facility." *Adamson*, 831 F. App'x at 83; *see, e.g.*, *United States v. Evans*, No. 3:00cr63, 2020 WL 5121331, at *4-*5 (E.D. Va. Aug. 31, 2020) (finding that the defendant's underlying medical conditions were "extraordinary and compelling" but that she did not face a particularized risk of contracting COVID-19 at her facility).

Courts have required that a defendant's particularized risk "be supported by evidence of an actual outbreak in his facility, not simply the mere possibility of COVID-19 spreading to his camp." *United States v. Little*, No. 1:10-cr-135, 2020 WL 3442173, at *2 (E.D. Va. June 23, 2020). The defendant asserts that he is at a risk of re-infection of COVID-19 due to, among other things, "the lack of vaccine efficacy against the 'high amount of viral inoculum in prison,'" and the conditions and place of confinement at Fort Dix FCI. (Dkt. 56 at 6).

As of May 14, 2022, however, zero out of a total 3,262 inmates and only 2 staff members at Fort Dix FCI are positive for COVID-19. *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited May 14, 2022). The low number of active cases illustrates that the defendant is not at a heightened risk of contracting COVID-19 at his facility.

*See, e.g.*, *United States v. Jennings*, No. 3:18-cr-34 (REP), 2021 WL 2815013, at *2 (E.D. Va. July 6, 2021) (finding no particularized risk where the defendant's facility had only 3 positive tests among inmates and 3 positive tests among staff members); *United States v. Woolridge*, No. 3:09cr156 (DJN), 2021 WL 415131, at *5 (E.D. Va. Feb. 5, 2021) (finding no particularized risk where there were only 8 active cases of COVID-19 among an inmate population of 1,404). Further, 1,521 inmates and 129 staff members at the facility previously tested positive for COVID-19 and have since recovered. *COVID-19 Cases*, BOP. These figures demonstrate that the number of COVID-19 cases at the facility has been declining, such that the situation at Fort Dix FCI "is improving, not deteriorating." *United States v. Day*, 474 F. Supp. 3d 790, 806 (E.D. Va. 2020) (finding no particularized risk where the number of positive cases had "steadily declined since Defendant filed his motion").

And as of May 14, 2022, 2,886 inmates and 300 staff members at the facility have been fully inoculated against COVID-19. *COVID-19 Vaccine Implementation*, BOP, https://www.bop.gov/coronavirus/ (last visited May 14, 2022). In addition to the defendant's complete vaccination, distribution of the vaccine to others at his facility further minimizes his risk of contracting COVID-19. *See, e.g.*, *Mosley v. United States*, No. 2:11-cr-58-3, 2021 WL 2386120, at *4 (E.D. Va. June 10, 2021) (concluding, based on "information from the CDC" about resuming normal activities after vaccination and evidence that "many of the inmates within [the defendant's] facility [were] vaccinated (and continue to be vaccinated," that the defendant's circumstances were not "so extraordinary as to warrant release from incarceration"). Given the low infection rate and the high vaccination rate at the defendant's facility, he has not established a particularized risk of contracting COVID-19. *See, e.g.*, *United States v. Norman*, No. 4:11-cr-101 (RCY), 2021 WL 5003243, at *5 (E.D. Va. Oct. 28, 2021) (finding, based on "the

availability of vaccines and the low number of positive cases there currently," that the defendant could not "establish a particularized risk of contracting COVID-19" at his facility); *Smith*, 2021 WL 3641463, at *3 (finding no particularized risk where there were no actives cases of COVID-19 among inmates or staff at the defendant's facility, and the facility had reached "a very high level of vaccinations" among inmates and staff).

Because the defendant has not established a particularized risk of contracting COVID-19 at his facility, he is not entitled to compassionate release under § 3582(c)(1)(A).

## VI.   The Court should deny the defendant's motion because the statutory sentencing factors do not support release.

Even if the Court determines that the defendant has demonstrated an extraordinary and compelling reason for compassionate release, it should deny the defendant's motion because the statutory sentencing factors weigh against release. *See, e.g.*, *High*, 997 F.3d at 187. Section 3582(c)(1)(A) requires a court to consider the factors set forth in 18 U.S.C. § 3553(a) before reducing a defendant's sentence. Those factors include "the nature and circumstances of the underlying offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and "the need for the sentence imposed" "to reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2). Courts should also consider "the kinds of sentences available," *id.* § 3553(a)(3), and "the need to avoid unwarranted sentence disparities," *id.* § 3553(a)(6). Additionally, "the Sentencing Commission has emphasized that a defendant's rehabilitation while incarcerated," by itself, is "insufficient to warrant a sentence reduction." *Woolridge*, 2021 WL 415131, at *3 (citing U.S.S.G. § 1B1.13 n.3); *see* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a sentence reduction.). In

this case, the relevant statutory sentencing factors do not support compassionate release.

The seriousness of the defendant's offenses weighs heavily against release. Courts in this district consistently have denied compassionate release based on the seriousness of the defendant's offense. *United States v. Reid*, No. 2:02-cr-172-7 (RBS), 2020 WL 7318266, at *3 (E.D. Va. Dec. 10, 2020) (finding that the statutory sentencing factors weighed against release where the defendant had "served as a 'manager' in a vast drug-trafficking conspiracy" and "continued his wrongful conduct even after his arrest by directing a co-conspirator to collect drug proceeds"); *see also Albury v. United States*, No. 2:19-cr-68, 2020 WL 6779643, at *5 (E.D. Va. Oct. 23, 2020) (finding that the statutory sentencing factors weighed against release where the defendant "was convicted of a large-scale drug trafficking crime that he conducted over the course of five years," "possessed firearms," and "often travelled interstate to purchase and sell drugs"). As laid out in the PSR, the defendant's offenses include varying forms of fraud, money laundering, obstruction, and the exploitation of children. Specifically, the defendant duped 10 investors out of over $800,000 in an investment fraud scheme, he engaged in witness tampering during the federal investigation of his investment fraud scheme, he engaged in a scheme to defraud a federal government contractor through fictious timesheets, he engaged in unlawful monetary transactions to launder the proceeds of his federal program fraud scheme, and he kept a trove of more than 11,000 depictions of child pornography on his electronic devices. Further, the defendant had inappropriate interactions with minors before his arrest. Said simply, the seriousness of the defendant's criminal conduct cannot be overstated, and through his conduct, he hurt investors, companies, employees, and countless children. The defendant's criminal conduct was so serious that, at sentencing, the Court remarked that had the government asked for a greater sentence, the Court would have imposed a sentence up to the maximum of 20

years. (Dkt. 51 at 41:6-11).

The defendant is precisely the type of individual who requires specific deterrence. His crimes were calculated and repetitive. His crimes were not the result of a momentary lapse of judgment. His early release from prison – after serving less than two years of his 151-month sentence – would not deter him from engaging in future criminal conduct. A substantial term of imprisonment is not only warranted, but it is needed to specifically deter the defendant and to deter others who would seek to commit similar crimes.

Notably, at the sentencing hearing, the Court identified the need to protect the public as perhaps the single most important factor governing the defendant's potential sentence. The Court stated, "I have got to say if there is a single factor in this case that is more important that the others it is that [the defendant] is a man who is in his 50s . . . who will eventually get out and be able to function in society, and the shorter the sentence the sooner he can get back to doing what he did in this case. Protecting the public from Mr. Miller is crucial in this case." (*Id*. at 39:15-22). Granting the defendant's release now – without him serving a substantial sentence – would not protect the public from the defendant's future criminal conduct. Likewise, early release would not promote respect for the law.

Courts in this district "have considered the length of time served an important factor when ruling on motions for compassionate release during the COVID-19 pandemic." *Evans*, 2020 WL 5121331, at *7 (finding, even though the defendant's health conditions presented "extraordinary and compelling reasons" for release, that release after the defendant had served "well under half of her sentence[] would not provide just punishment or afford adequate deterrence for like offenses" (internal quotation marks omitted)); *see also United States v. Lloyd*, No. 2:11-cr-36 (MSD), 2020 WL 4501811, at *3 (E.D. Va. Aug. 5, 2020) (finding, where the

16

defendant "ha[d] served less than half of his sentence even when sentencing credits [were] considered," that "[t]he need to provide adequate deterrence for this Defendant" and "to avoid unwarranted sentencing disparities" weighed against release); *United States v. Hill*, No. 3:14cr114, 2020 WL 6049912, at *5 (E.D. Va. Oct. 13, 2020) (denying compassionate release where the defendant had "served only 40% of his 188 month sentence, which may not afford adequate deterrence to his criminal conduct").  In this case, the defendant has served only 14% of his 151-month sentence, such that compassionate release would not provide adequate deterrence and would result in the defendant receiving a disparate sentence relative to similarly situated defendants.

Because the § 3553(a) factors counsel against relief, the defendant is not entitled to compassionate release.

## Conclusion

The Court should deny the defendant's motion for compassionate release.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:   /s/ *Kashan K. Pathan*
Kashan K. Pathan
IL Bar No. 6327422
Assistant United States Attorney
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone: (804) 819-5400
Fax: (804) 771-2316
Email: kashan.pathan@usdoj.gov