IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal Action No. 3:20cr109

GORDON G. MILLER, III,
        Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the defendant Gordon G. Miller, III's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 56.) Miller requests compassionate release because he has "underlying health conditions recognized by the [Centers for Disease Control and Prevention ("CDC")] as factors [which] increase his risk of a severe second re-infection of . . . COVID-19." (*Id.* at 5.) The Court finds that Miller does not present an extraordinary and compelling reason for relief and that, in any event, the 18 U.S.C. § 3553(a) factors support neither a reduction in Miller's sentence nor his release. The Court will thus deny his motion.

## I. BACKGROUND

The Court begins by providing a comprehensive summary of Miller's crimes. In June 2020, federal agents obtained and executed a search warrant at Miller's home as part of an investigation into suspected fraud offenses. (ECF No. 69, at 13.) The warrant authorized a search of Miller's residence, the seizure of electronic devices, and the forensic examination of those devices for evidence of the suspected fraud. (*Id.*) Agents seized several devices and, in an initial review, discovered pornographic material on one of Miller's external hard drives. (*Id.*)

Federal Bureau of Investigation Child Exploitation Task Force agents determined that several of the images depicted child sexual abusive material ("CSAM"). (*Id.*) On June 19, 2020, agents executed a second warrant to search Miller's electronic devices for evidence related to child pornography. (*Id.*) On September 10, 2020, agents conducted an additional search of Miller's house and seized more devices. (*Id.*) Between the June and September searches, the government seized eighty-three devices and determined that at least sixteen contained CSAM, including more than 700 depictions of child pornography. (*Id.* at 14.)

Investigators also uncovered evidence of Miller's overlapping financial fraud schemes. (*Id.* at 7–12.) From roughly February 2017 through June 2020, Miller used Quora.com to solicit approximately $1 million from eleven investors. (*Id.* at 16.) Miller represented that investors' funds would be secured by his own holdings in various companies and promised not only the return of the investors' principal payments but also significant amounts of interest. (*Id.*) Rather than invest it, Miller used the money for his own expenses, including paying down his business debts and making payments to various young women. (*Id.*) As of May 2021, only one investor had received the return of his principal payment. (*Id.*) No investors received interest. (*Id.*)[1]

Agents arrested Miller in September 2020. (*Id.* at 13.) A grand jury indicted Miller on eight counts on October 7, 2020.[2] (*Id.*) In December 2020, Miller tested positive for COVID-19 while he awaited trial at the Northern Neck Regional Jail. (ECF No. 69, at 25.) Jail staff

---

[1] Miller's network of fraud also included a money laundering scheme under the guise of a federal subcontractor relationship. (*Id.* at 17.) Miller secured a federal subcontract and billed the prime contractor for the work of four employees when, in reality, only Miller worked consistently on the contracted project. (*Id.*) Miller cashed $300,516.32 directly to himself.

[2] The indictment charged Miller with four counts of wire fraud, two counts of mail fraud, one count of engaging in an unlawful monetary transaction, and one count of witness tampering. (ECF No. 1.)

transported Miller to a local hospital where he remained for almost a month.[3] (*Id.*) Subsequently, on February 9, 2021, the government filed a three-count criminal information charging Miller with wire fraud, engaging in an unlawful monetary transaction, and receipt of child pornography. (ECF No. 22.) On February 16, 2021, Miller waived formal indictment and pleaded guilty to all three counts in the information. (ECF Nos. 27, 30, 32.)

At Miller's sentencing hearing, the Court calculated an advisory guideline range of 108 to 135 months of imprisonment. (ECF No. 46.) Upon motion of the government and based on its consideration of the sentencing factors in 18 U.S.C. § 3553(a), the Court imposed a variant sentence of 151 months' incarceration. (ECF No. 49.) In sentencing Miller, the Court relied heavily on the need to protect the public, noting:

> [If] there is a single factor in this case that is more important than the others it is that [Miller] is a man who is in his [fiftie]s . . . who will eventually get out . . . and the shorter the sentence the sooner he can get back to doing what he did in this case. Protecting the public from Mr. Miller is crucial in this case.

(ECF No. 51, at 39:15–22.) The Court also opined that "[j]ust punishment [in Miller's case is] a serious and weighty sentence." (*Id.* at 38:25–39:1.)

Miller is currently incarcerated at Federal Correctional Institute Fort Dix ("FCI Fort Dix") and has a projected release date of May 31, 2031.[4] He is fifty-seven years old and suffers from numerous medical conditions, including rheumatoid arthritis, obesity, kidney disease, chronic obstructive pulmonary disease ("COPD"), asthma, and reduced lung capacity from prior COVID-19 infection. (ECF No. 56, at 5–6, 26, 28.)

---

[3] Miller received oxygen treatments for several weeks following his return to the jail. (*Id.*)

[4] *Find an Inmate*, Federal Bureau of Prisons ("BOP'), https://www.bop.gov/inmateloc/ (select "Find By Number"; then select "BOP Register Number"; then search for "07833-509") (last visited September 29, 2022).

Miller now seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A). He asks the Court either to alter his sentence to "time served" or reduce his sentence. (*Id.* at 29.) Specifically, Miller asserts that his incarceration at FCI Fort Dix exposes him to a significant risk of contracting COVID-19 again. (*Id.* at 5.) He also alleges that his numerous medical conditions render him vulnerable to serious illness or death from a second COVID-19 infection. (*Id.* at 6.) The government opposes the motion, arguing that Miller has not established an extraordinary and compelling reason for release and that the 18 U.S.C. § 3553(a) sentencing factors do not support an adjustment to Miller's sentence. (ECF No. 73, at 1, 17.)

As explained below, the Court agrees with the government and will deny Miller's motion.

## II. DISCUSSION

### A. *Compassionate Release Standard*

Under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, a district court may modify or reduce a criminal defendant's sentence if it finds that "'extraordinary and compelling reasons warrant such a reduction' . . . and if the [18 U.S.C.] § 3553(a) sentencing factors merit a reduction."[5] *United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). Prior to the First Step Act, courts could consider only BOP-initiated motions for compassionate release. *Id.* at 276. Today, § 3582(c)(1)(A) permits a defendant to file a motion for compassionate release directly with the court if the defendant first seeks relief from the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). Specifically, the statute requires that a defendant either exhaust

---

[5] Even if extraordinary and compelling reasons do *not* exist, a district court may modify a defendant's sentence if, among other things, "the defendant is at least 70 years of age, has served at least 30 years in prison" for a sentence imposed under 18 U.S.C. § 3559(c), and the Director of the Bureau of Prisons has determined "that the defendant is not a danger to the safety of any other person or the community." 18 U.S.C. § 3582(c)(1)(A)(ii). None of these circumstances apply to Miller.

4

his administrative remedies or wait thirty days after requesting that the warden of his facility file a motion for a sentence modification before he may move the court directly. *See id.*

Congress did not define extraordinary and compelling reasons in § 3582(c)(1)(A). "Instead, the Sentencing Commission . . . addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13." *McCoy*, 981 F.3d at 276. Before the First Step Act, § 1B1.13 advised the BOP to consider compassionate release if a defendant's claim fell into one of four specific categories of "extraordinary and compelling reasons." *Id.* Following the passage of the Act, however, the Sentencing Commission failed to update § 1B1.13 to account for motions filed by defendants. *Id.* at 281–82. As a result, § 1B1.13 does not bind courts presented with a defendant's motion for compassionate release. *Id.* at 284. Accordingly, the Court may "consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)) (alteration and emphasis in original).

During the COVID-19 pandemic, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized *susceptibility* to the disease and a particularized *risk* of contracting the disease at his prison facility." *See, e.g.*, *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (emphasis added). Even upon such a showing, however, a court may not reduce a defendant's sentence unless, after considering the § 3553(a) factors to the extent they are applicable, it determines that the defendant's resentencing or release is merited by all available facts. 18 U.S.C. § 3582(c)(1)(A).

### B. Analysis

The Court finds that Miller has exhausted his administrative remedies; the Court, therefore, may consider his request for relief. Upon careful consideration, the Court concludes that even if

Miller's medical conditions and incarceration during the COVID-19 pandemic present a compelling and extraordinary reason for relief, the § 3553(a) factors do not support a sentence modification in his case. Accordingly, the Court will deny Miller's motion and affirm his sentence.

### 1. *Administrative Exhaustion*

The government concedes that Miller has properly met § 3582(c)(1)(A)'s threshold requirement for filing a motion for compassionate release directly with the Court. (ECF No. 73, at 7 n.1.) On September 24, 2021, Miller submitted a request for compassionate release to prison officials. (ECF No. 56, at 5; ECF No. 60-1.) On October 22, 2021, the BOP denied Miller's request. (ECF No. 60-2.) Miller submitted a second request to the BOP on November 30, 2021, and filed his motion for compassionate release with the Court on February 9, 2022. (ECF No. 60-3.) Because Miller filed his motion for compassionate release more than thirty days after seeking relief from the BOP, Miller has satisfied the exhaustion requirement of § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021).

### 2. *Extraordinary and Compelling Reasons*

Miller contends that his numerous medical conditions and the ongoing COVID-19 pandemic combine to create an extraordinary and compelling reason justifying his release. (ECF No. 56, at 5.) Specifically, Miller argues that COVID-19 spreads rapidly in prisons generally—and at FCI Fort Dix in particular—because the inmates are closely confined. (*Id.*) Miller further contends that his numerous medical conditions make him particularly susceptible to experiencing serious illness or death if he contracts COVID-19 again.[6]

---

[6] Miller has obesity, rheumatoid arthritis, kidney disease, sleep apnea, COPD, asthma, and "lung disease." (*Id.* at 6.)

6

Typical arguments for release from prison based on the coronavirus pandemic depend on assertions like Miller's that (1) the "conditions and place of [a defendant's] confinement" expose him to a high infection risk—or particularized risk—and (2) the defendant's underlying medical conditions increase his risk of experiencing a "severe . . . infection"—or particularized susceptibility. (*Id.*); *see United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021). As explained below, the Court finds that Miller fails to carry his burden of establishing that he has a particularized risk of contracting COVID-19 while incarcerated at Fort Dix.

The Court accepts that Miller has a particularized susceptibility to COVID-19 due to his numerous underlying medical conditions. "In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, *inter alia*, the guidance of the CDC." *United States v. Thompson*, No. 3:19cr76, 2021 WL 2673049, at *2 (E.D. Va. June 29, 2021). While some of Miller's conditions do not necessarily place him at a greater risk of a severe case of COVID-19,[7] Miller has at least three conditions that are recognized by the CDC as increasing an individual's risk for serious COVID-19 illness.[8] Based on Miller's medical

---

[7] For example, Miller suffers from rheumatoid arthritis and sleep apnea. (ECF No. 56, at 6.) Arthritis and sleep apnea are not included in the CDC's list of conditions that increase an individual's risk for severe COVID-19 illness. *See People with Certain Medical Conditions*, CDC (updated Sept. 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 29, 2022). The Court notes, however, that at least one study has drawn a link between sleep apnea and poor outcomes for COVID-19 recovery. *See* Brian E. Cade et al., *Sleep Apnea and COVID-19 Mortality and Hospitalization*, 202 Am. J. Respir. Crit. Care Med. 1462, 1462–63 (2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7667903.

[8] Miller suffers from obesity, kidney disease, and COPD, all of which are recognized by the CDC as increasing his risk of a serious COVID-19 infection. (ECF No. 56, at 6); *see People with Certain Medical Conditions*. Miller also has asthma, which the CDC states can increase an individual's risk of severe illness if the diagnosis is "moderate to severe." (ECF No. 56, at 6); *see People with Certain Medical Conditions*. The severity of Miller's asthma is unknown.

records, the CDC's guidance on COVID-19, and Miller's previous reaction to the virus, the Court concludes that Miller has a particularized susceptibility to serious illness from COVID-19. *See High*, 997 F.3d at 185.

The Court thus turns to whether Miller demonstrates a particularized risk of contracting COVID-19 while incarcerated at FCI Fort Dix. Miller makes several allegations that FCI Fort Dix is guilty of "continued negligence [in] handling . . . the COVID-19 pandemic," citing, among other factors, the facility's past COVID-19 positivity rates among inmates and staff, the prison's high-capacity dormitories, and the BOP's COVID-19 recordkeeping processes. (ECF No. 56, at 13, 15–21.) The Court notes both that FCI Fort Dix has historically struggled with high rates of inmate infection and that other Courts have repeatedly found that inmates housed in that complex experience an increased exposure to the virus. *See, e.g., United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *5 (E.D. Va. July 17, 2020); *United States v. Clem*, No. RBD140405, 2021 WL 82947, *2 (D. Md. Jan. 11, 2021).

The BOP recently reported three active inmate infections and five active staff member infections at Fort Dix.[9] Any level of COVID-19 in an inmate's prison does, in theory, present some risk.[10] But such an attenuated risk does not rise to the level of extraordinary and compelling. Over 3,000 inmates at Fort Dix, including Miller,[11] have received a full course of COVID-19 vaccines. (ECF No. 56, at 24; ECF No. 73, at 6.) Even acknowledging new virus variants, Miller's likelihood of contracting COVID-19 is significantly reduced given the BOP's vaccination

---

[9] *See COVID-19*, BOP, https://www.bop.gov/coronavirus (last visited September 29, 2022).

[10] The Court notes, however, that infection rates in free society also continue to fluctuate.

[11] "Miller received the second Pfizer vaccine on April 21, 2021, and the Pfizer booster on December 8, 2021." (ECF No. 72, at 2.)

8

program. *See Benefits of Getting a COVID-19 Vaccine*, CDC (updated Aug. 17, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last visited Sept. 29, 2022) (stating "COVID-19 vaccines can offer added protection to people who had COVID-19, including protection against being hospitalized from a new infection, especially as variants . . . emerge").

Further, the BOP continues to operate in accordance with its COVID-19 "Modified Operations Plan," a comprehensive set of procedures designed to minimize viral spread in federal prisons. *See COVID-19 Coronavirus*, BOP, https://www.bop.gov/coronavirus/index.jsp (last visited Sept. 29, 2022) (identifying FCI Fort Dix as currently operating at "Level 2" of the Plan, with "moderate modifications" to operations); *see also Feiling*, 453 F. Supp. 3d at 841. Miller does not explain why the BOP's modern vaccination program and robust, ongoing mitigation efforts are insufficient to minimize the infection risk he faces while incarcerated. Although the Court concludes that this question is close, it finds that Miller fails to establish that he faces a particularized risk of contracting COVID-19 at Fort Dix and, accordingly, does not demonstrate an "extraordinary and compelling" reason for compassionate release.[12]

---

[12] Miller also asserts that he "has been exposed to conditions of confinement 'unprecedented in U.S. history,'" and that "such hardships . . . meet the threshold" for compassionate release. (ECF No. 56, at 14.) As this Court has explained before, "there are certainly cases in which the effects of the pandemic have fundamentally altered the nature of a defendant's incarceration such that it no longer comports with the sentencing court's expectations." (Civil Action No. 2:20cr100, ECF No. 43, at 8.) That is not the case before the Court. The Court knew when it sentenced Miller that he suffers from serious health issues and that he had previously contracted COVID-19 in December 2020. (*See* ECF No. 40, at 6-13; ECF Nos. 40-2, 40-3 (addressing Miller's health and the likely implications of the pandemic on the conditions of his confinement).)

### 3. *Section 3553(a) Factors*

Even if Miller had established an extraordinary and compelling reason for relief the Court would still deny his motion because the § 3553(a) factors do not support his early release.

Section 3553(a) requires that a district court impose a sentence that is "sufficient, but not greater than necessary" to achieve certain goals. 18 U.S.C. §§ 3553(a). As most relevant here, the court must evaluate the "nature and circumstances" of the offense and the need for the sentence to "reflect the seriousness of the offense;" must consider the need for the sentence to "protect the public from further crimes of the defendant;" and must evaluate the "characteristics of the defendant" in crafting a sentence. *Id.* §§ 3553(a)(1), (a)(2)(A), (a)(2)(C). Upon due consideration, the Court concludes that granting Miller's motion would actively undermine these goals and needlessly subject the public to risk.

The Court sentenced Miller in August 2021. Although the length of a defendant's sentence is not dispositive, Miller bears the burden of demonstrating that the weight of the § 3553(a) factors have meaningfully shifted during his roughly fourteen months of incarceration. (ECF No. 49); *see High*, 997 F.3d at 187. This he wholly fails to do.

Miller's white-collar crimes stand among the worst this Court has seen. From 2017 through 2020, Miller conducted a series of interconnected financial fraud schemes. (ECF No. 69, at 7–12.) The first scheme preyed on individuals: Miller solicited approximately $1 million from eleven investors under the guise of a complex and high-yield investment program. (*Id.* at 7–9.) No investors received Miller's promised payout. (*Id.*) The second scheme preyed on the United States government and federal contractors: Miller laundered a subcontractor's payments to himself,

collecting nearly $300,000 in fees.[13] (*Id.* at 9–12.) Seemingly unsatisfied with his foray into one type of crime, Miller simultaneously amassed a large collection of child pornography. (*Id.* at 13–14.) Federal agents identified over 700 pornographic images and videos saved on Miller's devices.[14] (*Id.* at 17.)

150 months is a lengthy sentence. In sentencing Miller, the Court carefully considered the need for such a punishment in this case. Indeed, in acknowledging the government's motion for variance "based on the gross nature of the crimes and . . . [Miller's] extraordinarily bad character," the Court noted that had the government asked, it would have sentenced Miller up to the statutory maximum of twenty years. (ECF No. 51, at 41:6–11.) Miller's original sentence reflected the severity of Miller's crimes and the need to justly punish him for them. Reducing Miller's sentence would frustrate the Court's intention to hold Miller accountable for his actions.

Further, and perhaps more importantly, Miller's various crimes directly harmed his victims in lasting ways. In the absence of meaningful evidence to the contrary, the Court finds that Miller continues to pose a significant risk to the welfare of the public. Miller points to his statistically low recidivism risk in support of his motion for compassionate release, (*see* ECF No. 56, at 27–28), but the Court considered this argument at sentencing and found it lacked merit, (ECF No. 51, at 33:12–17). Today, the Court again acknowledges Miller's recidivism argument but finds that Miller presents no compelling evidence that he will not pose a danger to the public if released. *See* 18 U.S.C. § 3553(a)(2)(A).

---

[13] Miller used his ill-gotten gains to coerce young women, including at least one minor, into sending him illicit photographs and engaging in sexual relationships with him. (*Id.* at 18.)

[14] Miller received offense level enhancements because the materials "involved a prepubescent minor or a minor who had not attained the age of 12 years" and "portray[ed] . . . sadistic or masochistic conduct or other depictions of violence; or . . . sexual abuse or exploitation of an infant or toddler." (*Id.* at 21.)

Finally, and most fatally, Miller presents no evidence of meaningful rehabilitation[15] and fails to show that his personal characteristics have changed since his sentencing. To the contrary, absent from Miller's filings before the Court is any reflection that he has accepted responsibility for his actions or bears any remorse for his crimes. As such, the Court's finds that his sentence remains sufficient, but no greater than necessary.

### III. CONCLUSION

Since the COVID-19 pandemic began, the Court has often been tasked with weighing the need for a defendant's continued incarceration against the chance that he will become seriously ill from infection. Despite his health conditions, the Court harbors no doubt that Miller's continued incarceration is in the best interest of the public and comports with the interests of justice. The Court finds that Miller has not shown "extraordinary and compelling reasons" warranting compassionate release under 18 U.S.C. § 3582(c)(1)(A) and that, even if he did, the § 3553(a) factors do not support any modification to his sentence. The Court will therefore deny Miller's motion. (ECF No. 56.)

An appropriate Order shall issue.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record, to the United States Probation Office, Richmond Division, and to Miller.

Date: 15 November 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

---

[15] United States Probation office notes that "[n]o disciplinary infractions or educational courses were noted for Mr. Miller." (ECF No. 72, at 1.) Miller reports that he is "currently enrolled in First Step Act recreational programming to include Walking With Ease, Talking to [Y]our [D]octor, and Healthy Living Across the Lifespan." (ECF No. 56, at 26–27.)